[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-10850
Non-Argument Calendar

_____

D.C. Docket No. 1:14-cv-00053-MP-CAS

KATIE M. MOSLEY,

Plaintiff–Appellant,

versus

ACTING COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

Defendant–Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(December 8, 2015)

Before MARTIN, JULIE CARNES, and ANDERSON, Circuit Judges.

PER CURIAM:

Appellant Katie Mosley appeals the district court's order affirming the Administrative Law Judge's ("ALJ") denial of her application for supplemental security income and disability insurance benefits.  Before the ALJ, Mosley had alleged only physical impairments in support of her claim for disability.  The ALJ determined that she was not disabled based on these alleged physical impairments.  Mosley does not challenge this determination by the ALJ.  Instead, she argues that the ALJ failed to fully and fairly develop the record regarding a potential impairment that she never alleged:  Mosley's potential mental impairment stemming from a low intelligence quotient ("I.Q.").  After careful review, we affirm.

## I.  BACKGROUND

In April 2011, Mosley filed an application for disability insurance benefits and supplemental security income with the Social Security Administration.  Alleging a disability onset date of April 15, 2009, Mosley represented that she was disabled and unable to work because she suffers from asthma, arthritis, diabetes, high blood pressure, and issues with her back, knees, and hands.  She contended that these physical impairments prevented her from working because her knees ached all of the time and she was frequently out of a breath, which prevented her from being able to walk more than three blocks or climb more than two steps without resting.  She further indicated that if she sat for too long, it hurt to stand up

2

and that she also had problems with her breathing when sitting.  Mosley did not allege any mental impairments.

The Commissioner of Social Security (the "Commissioner") denied Mosley's application for benefits.  At a subsequent hearing before the ALJ in September 2012, the ALJ heard testimony from Mosley and a vocational expert. Mosley testified that she dropped out of school after finishing the eighth grade and had not participated in any additional training or achieved her GED.  She had last worked as a hotel housekeeper but was fired after she was caught sitting and eating during her shift.  She reads the Bible and other books and could write in paragraph form.  However, she has experienced trouble making change from a $20 bill.  She has never obtained a driver's license and uses public transportation to get around. Notably, Mosley's counsel questioned her about her physical limitations, but asked no questions regarding any alleged mental limitations.

Following the hearing, the ALJ issued a decision, concluding that Mosley was not disabled for purposes of eligibility for disability benefits or supplemental security income.  Specifically, upon review of the record evidence, the ALJ found that Mosley suffered from diabetes, arthritis, hypertension, asthma, obesity, and disorders of the spine, hips, and knees, but determined that these impairments did not meet or equal any of the listed impairments in the Social Security Administration regulations.  The ALJ further determined that Mosley could

3

perform light work with a sit/stand option and with restrictions on activities such as avoiding heights, the operation of heavy machinery, and the use of hand or foot controls on a sustained, regular basis. Based on this finding, coupled with the vocational expert's opinion that a significant number of jobs accommodating Mosley's limitations existed in the national economy, the ALJ concluded that Mosley was not disabled. The Appeals Counsel denied Mosley's request for review.

In April 2014, Mosley filed a complaint in the district court challenging the denial of disability benefits and supplemental security income. She requested a remand, arguing that the ALJ should have inquired into—and fully developed the record regarding—her I.Q., in light of record evidence showing that she failed to complete middle school, had not earned a GED, had never learned to drive, had never earned at a substantial gainful activity level, and was unable to make change from a $20 bill.

A magistrate judge issued a report and recommendation ("R&R"), recommending that the denial of disability benefits and supplemental security income should be affirmed. The magistrate judge noted that there was no evidence in the record showing that Mosley had been diagnosed with mental retardation or an intellectual disability nor had Mosley raised this issue before the ALJ. Moreover, the record did not contain any evidence that Mosley had a significantly

sub-average I.Q., or that her failure to finish school or obtain a driver's license was the result of a mental impairment. Based on this record, the magistrate judge concluded that she could not demonstrate prejudice from the failure to develop the record on this claim and there was no need to remand for a determination of Mosley's I.Q. Over Mosley's objections, the district court adopted the R&R and affirmed the Commissioner's decision denying benefits. This appeal followed.

## II. DISCUSSION

We review *de novo* the legal principles that underlie the Commissioner's decision in Social Security cases, including a claim that the ALJ failed to fully and fairly develop the record. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *Brown v. Shalala*, 44 F.3d 931, 934–36 (11th Cir. 1995).

In determining whether a claimant has proven that she is disabled, the ALJ must complete a five-step sequential evaluation process. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The claimant has the burden to prove that (1) she "has not engaged in substantial gainful activity," (2) she "has a severe impairment or combination of impairments," and (3) her "impairment or combination of impairments meets or equals a listed impairment" such that she is entitled to an automatic finding of disability. *Id.* If the claimant is not able to meet or equal the criteria for a listed impairment, she must proceed to the fourth step, which requires

showing that she is unable to do her past relevant work. *Id.* "At the fifth step, the burden shifts to the Commissioner to determine if there is other work available in significant numbers in the national economy that the claimant is able to perform." *Id.* If the Commissioner demonstrates that there are jobs that the claimant can perform, the claimant must show that she is unable to perform those jobs in order to establish that she is disabled. *Id.*

In completing this five-step process, the ALJ has a duty to develop a full and fair record, regardless of whether the claimant is represented by counsel. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). If a claimant is not represented by counsel, the ALJ has a duty to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Brown*, 44 F.3d at 934–35 (quotations omitted). "Nevertheless, the claimant bears the burden of proving that [s]he is disabled, and, consequently, [s]he is responsible for producing evidence in support of [her] claim." *Ellison*, 355 F.3d at 1276.

The ALJ's failure to fulfill his duty to fully develop the record, however, only necessitates a remand if "the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Brown*, 44 F.3d at 935 (quotations omitted). In other words, "there must be a showing of prejudice before we will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [ALJ] for further development of the record." *Id*.

6

Prejudice requires a showing that "the ALJ did not have all of the relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985).

Here, Mosley has not shown that the ALJ failed to fully and fairly develop the record as to whether she had a mental impairment. The record shows that the ALJ thoroughly inquired into the facts and circumstances related to the claims Mosley presented to him. Though represented by counsel throughout the proceedings, Mosley did not list any mental impairment or intellectual functioning issues in her applications for supplemental security income and disability insurance benefits. In fact, she stated in her disability report that she had not seen a doctor for any mental conditions, including learning or emotional issues. Finally, during her hearing testimony she asserted no intellectual or mental impairment that would prevent her from working.

Likewise, the medical records considered by the ALJ neither identified any mental health diagnoses nor offered any suggestion that Mosley's treating physicians believed she had limited intellectual functioning. In fact, Mosley denied any impairments or barriers to learning on several intake forms. Furthermore, because Mosley was represented by counsel, the ALJ did not have a

7

heightened duty to probe into all relevant facts surrounding her disability claim.[1]
*See Ellison*, 355 F.3d at 1276; *Brown*, 44 F.3d at 934–35.

We are also not persuaded by Mosley's argument that the ALJ should have engaged in additional inquiry regarding whether she had a mental impairment given her educational history, lack of a driver's license, and inability to work at a substantial gainful activity level. Mosley's school transcripts gave no indication that she attended special education classes, and she never indicated that she left school as a result of intellectual difficulties. She also testified that she read the Bible, could read other books, and could write in paragraph form. Her testimony did not provide any indication that her lack of a driver's license was caused by a mental impairment or intellectual difficulties. Additionally, the ALJ implicitly found that Mosley had previously earned at the substantial gainful activity level by determining that her job as a hotel housekeeper was past relevant work, and Mosley does not challenge that finding on appeal. *See* 20 C.F.R. § 404.1560(b)(1) ("Past relevant work is work that you have done within the past 15 years, that was

---

[1] Citing the Supreme Court's decision in *Sims v. Apfel*, 530 U.S. 103 (2000), Mosley argues that *Sims* expanded the ALJ's duty to fully and fairly develop the record. We disagree. In *Sims*, the Supreme Court addressed the requirement of issue exhaustion in Social Security proceedings and ultimately concluded that a claimant did not waive an issue that he failed to specifically include in his request for review to the Appeals Council. 530 U.S. at 106, 112. In reaching this conclusion, the Supreme Court explained that Social Security proceedings were inquisitorial, rather than adversarial, and that the ALJ had a duty to investigate the facts and develop arguments for and against granting benefits. *Id.* at 110-11 (citing *Richardson v. Perales*, 402 U.S. 389, 400-01 (1971)). Albeit the Court restated the long-standing principle regarding the ALJ's duty to fully develop the record, the extent of that duty was not an issue before the Court. Accordingly, *Sims* did not impose on an ALJ any heightened duty, as Mosley argues.

8

substantial gainful activity . . . ."); *see also Allstate Ins. Co. v. Swann*, 27 F.3d 1539, 1542 (11th Cir. 1994) (noting that issues not briefed on appeal are abandoned). Given that there was nothing in the record to alert the ALJ to the possibility that Mosley is mentally impaired, the ALJ did not fail to develop the record as it pertains to Mosley's alleged mental impairments. *Ellison*, 355 F.3d at 1276 (stating that the claimant bears the ultimate burden of establishing that she has a disability).

In any event, even if we agreed that the ALJ had failed to fully develop the record regarding her alleged mental impairments, Mosley has not established clear prejudice that necessitates remand. *See Brown*, 44 F.3d at 935. Section 12.05(C) of the listing of impairments sets out the criteria for establishing an intellectual disability: (1) a "significantly subaverage general intellectual functioning with deficits in adaptive functioning" with an onset before age 22; (2) a "valid verbal, performance, or full scale IQ of 60 through 70"; and (3) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05(C).

Mosley suggests on appeal that the record evidence indicates that she has an intellectual disability because, if tested, her I.Q. is likely to be 70 or below and she has deficits in adaptive functioning. Yet, Mosley offers nothing other than her own speculation that her I.Q. might be below 70. Further, the record evidence relating

to Mosley's daily activities and behavior does not suggest that she has the requisite deficits in adaptive functioning.[2] Her testimony indicated that she was capable of taking care of herself (that is, dressing and bathing herself) and doing housework, including laundry, cooking, washing dishes, making beds, vacuuming, and taking out the trash. While Mosley did not have a driver's license, she was able to use public transportation to go from place to place. As to her educational record, there was no indication that she attended special education classes or that she dropped out of school (in the eighth grade) because of intellectual difficulties. Finally, her intellectual capacity was sufficient to allow her to maintain employment as a hotel housekeeper for six years, only to be fired for sitting down and eating on the job.

In short, the ALJ considered and assessed the record evidence presented to him, including Mosley's testimony and medical records. *See Kelley*, 761 F.2d at 1540. Mosley has failed to demonstrate any evidentiary gap in the record that resulted in clear prejudice sufficient to justify a remand. *See Brown*, 44 F.3d at 935.

---

[2]  Although Social Security regulations do not define "deficits in adaptive functioning," the Diagnostic and Statistical Manual of Mental Disorders states that adaptive functioning refers "to how well a person meets standards of personal independence and social responsibility, in comparison to others of similar age and sociocultural background. Adaptive functioning involves adaptive reasoning in three domains: conceptual, social, and practical." AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 37 (5th ed. 2013).

## III.   CONCLUSION

For all of the above reasons, we affirm the district court's order affirming the Commissioner's denial of Mosley's application for disability insurance benefits and supplemental security income.

**AFFIRMED.**